IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MONICA BUFKIN
on behalf of H.P.                                                                                     PLAINTIFF

V.                                              CIVIL ACTION NO.  3:12CV659 CWR-LRA

CAROLYN W.  COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY                        DEFENDANT

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Monica Bufkin appeals the final decision denying the application for Supplemental Security Income ("SSI") that she filed on behalf of her minor son, H.P.  The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge.  Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

**Facts and Procedural Background**

On July 9, 2009, Plaintiff filed an application for SSI on behalf of her then 11-year-old son, H.P., alleging disability due to mental retardation, asthma, and attention deficit hyperactivity disorder ("ADHD"), with an alleged onset date of May 1, 2007.[1] The application was denied initially and on reconsideration.  She appealed the denial, and on June 23, 2011, Administrative Law Judge James Barker  ("ALJ") rendered an unfavorable decision, finding that Plaintiff had not established that H.P. was disabled

---

[1] ECF No. 7. pp. 37, 81-84.

within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's request for review.  She now appeals that decision.

## Childhood Disability Standard

In order for a child to be found disabled and entitled to SSI benefits, he or she must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I).  When evaluating a child's eligibility for disability benefits, an ALJ engages in a three-step sequential process, which considers:

>   (1)   whether the child is doing substantial gainful activity;
>   (2)   if not. whether the child has a medically determinable "severe" impairment or combination of impairments; and
>   (3)   if so. whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

*See* 20 C.F.R. § 416.924 (b)-(d).  If a child's impairment does not meet, medically equal, or functionally equal a listed impairment, the child will not be considered disabled. Functional equivalency is measured according to six domains of function: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1); *see also Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citing *Sullivan v. Zebley* 493 U.S. 521, 530-32 (1990)).  To

be functionally equivalent to a listing, the impairment must result in either a "'marked' limitation in two domains of functioning or an 'extreme' limitation in one domain ... ." 20 C.F.R. § 416.926a(a).  A marked limitation interferes with the child's ability to "independently initiate, sustain, or complete activities," while an extreme limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. §§ 416.926a(e)(2)(I) & 416.926a(e)(3)(I).

Upon reviewing the evidence, the ALJ concluded that H.P. was not disabled under the Social Security Act and was not entitled to childhood disability benefits pursuant to 20 C.F.R. § 416.924(a).  At step one of the three-step sequential evaluation process, the ALJ found that H.P. had not engaged in substantial gainful activity since the date of his application.  At steps two and three, the ALJ found that while H.P.'s asthma and attention deficit hyperactivity disorder were severe, the medical evidence did not support listing-level severity.  With regard to the six functional domains, the ALJ concluded that Plaintiff had less than marked limitations in acquiring and using information, attending and completing tasks, and health and physical well-being, and no limitations in interacting and relating with others, moving and manipulating objects, and in caring for himself.

## Standard of Review

This Court's review of the ALJ's decision is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards."  *Brock v. Chater*, 84 F.3d

726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d. 243, 245 (5th Cir. 1991)). *See also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Fifth Circuit defines substantial evidence as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Any findings by the Commissioner that are supported by substantial evidence are conclusive. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

## Discussion

Bufkin raises two primary issues on appeal: (1) the ALJ's finding that H.P.'s impairments did not meet Listings 112.05(C) or 112.05(D) for mental retardation is not supported by substantial evidence; and (2) the ALJ failed to consider the limitations caused by all of H.P.'s impairments in assessing whether his impairments were functionally equal to the listings. The undersigned rejects these arguments for the reasons that follow.

### 1. Substantial evidence supports the ALJ's finding that H.P.'s impairments did not meet the Listing for mental retardation.

To establish a mental retardation claim for disability benefits under Listing 112.05 (C) or (D), claimants must demonstrate "significantly subaverage general intellectual functioning *__with__* deficits in adaptative functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.05D (emphasis added). Section D requires intelligence testing showing "a valid

4

verbal, performance, or full scale IQ of 60 though 70 and a physical or other mental impairment imposing an additional and significant limitation of function." *Id.* Section C requires a "valid verbal, performance, or full scare IQ of 59 or less." *Id.* If more than one I.Q. is obtained, the lowest score is considered. *See* Section 12.00(d) of Appendix 1. If a disability claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled. A claimant has the burden of proving that his condition meets or equals a listing, and he must manifest all of the specified criteria of a particular listing to meet this burden. *Zebley,* 493 U.S. 521 at 530.

As evidence that her son satisfies the listings for mental retardation, Plaintiff cites the low IQ scores assessed by Consulting Examiner, Dr. Jan Boggs, in September 2009 which showed that H.P. had a Performance IQ score of 54 and a Full Scale IQ score of 65. She additionally cites the ALJ's finding that H.P.'s asthma and attention deficit hyperactivity disorder were severe impairments. Further, as evidence of deficits in adaptive functioning, she cites H.P.'s poor academic performance and history of behavioral problems in school. Contrary to Plaintiff's assertions on appeal, the record clearly reflects that the ALJ considered all of this evidence in assessing whether the listing criteria were met.[2]

As to H.P.'s intellectual functioning, the ALJ observed that no examining or treating physician of record has ever diagnosed H.P. with mental retardation. To the

---

[2]ECF No. 7, pp. 153-155; 210-213.

contrary, despite his poor academic performance, the evidence reflects that Plaintiff was in regular classes and has never repeated a grade. Further, while the claimant's performance and full scale I.Q. scores fall within the listing range for mental retardation, low I.Q. scores alone are not enough to satisfy Listing 112.05. The listing for mental retardation requires that "significantly subaverage general intellectual functioning with deficits in adaptive functioning" must also be proven. *Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009). The evidence, including his mother's own testimony, conclusively establishes that H.P. does not satisfy all of the listing criteria.

As noted by the ALJ, Dr. Boggs observed in his psychological evaluation of H.P. that he was restless, distractible, failed to follow directions well, and placed symbols on the wrong line on "coding." He also "needed repetition of questions and cues to stay on task" during the examination. Dr. Boggs additionally noted that H.P. had not taken his medication the day of testing nor the day before. He was also "so erratic that it was difficult to estimate his actual learning ability and there was a major discrepancy between his Achievement Standard scores and his IQ results."[3] With regard to his test results, Dr. Boggs specifically opined the following:

> [H.P.'s] Full Scale IQ score consists of much better verbal than performance outcomes. He scored in the Low-Average range on the former and very deficient on the latter. His Math Standard score was comparable to general intellectual outcomes and Reading was significantly higher. He says that reading is his favorite subject and his decoding skills were quite

---

[3]ECF No. 7, p. 211.

6

good. He was able to pronounce the words ALCOVE, TRANQUILITY, INQUISITIVE, MUNICIPAL and UNANIMOUS. He missed CONTEMPORARY, TRIUMPH, EFFICIENCY, and BIBLIOGRAPHY. His teacher has previously indicated a problem with his reading comprehension. His verbal intelligence obviously surpasses his performance. It looks as if he would have the greatest difficulty keeping pace on written materials such as copying from the chalkboards or from books. I don't know where the small finger tremor comes from. There could be a problem with him [sic] taking his medication for awhile and then abstaining from it. He had not taken any today or yesterday. [H.P.] has ADHD features which interfered with optimal test outcomes. These are at a moderate level. But, here again he was inconsistent. Despite what appeared to be attentional problems on the test, he was able to repeat seven digits forward and three in reverse which is an average outcome, go figure.[4]

Based on his examination, Dr. Boggs diagnosed H.P. with moderate ADHD, taking care to explain that "while the claimant's scores were widely divergent, this appeared to be a reasonably valid reflection of his learning ability and behavioral characteristics."[5] Although Plaintiff correctly notes that Dr. Boggs never expressly stated that his test results were invalid, given the evidence as stated, the ALJ reasonably concluded that H.P.'s low I.Q. scores, while in listing range, were attributable to his ADHD, not mental retardation.

Even if the Court were to find otherwise, the evidence fails to establish that H.P. has significant deficits in adaptive functioning to meet Listing criteria. With respect to his academic performance, the record reflects that while he received extra help because of problems with acquiring and using information, his sixth grade teacher reported that it "was not to an unusual degree," but rather to correct careless mistakes on his class work

---

[4]ECF No. 7, p. 212.

[5]ECF No. 7, p. 210.

or homework.  Plaintiff nevertheless maintains that the ALJ discounted favorable evidence of deficits in adaptive functioning, i.e, H.P.'s  disciplinary problems in school, which included, among other things:  tardiness, fighting, dress code violations, and allegedly inappropriately touching female students.  It is not the role of this Court, however, to re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ.  The record also reflects that this conduct occurred over the course of three years.  And while Plaintiff's mother testified that H.P. "stays in trouble all the time," she acknowledges that he had not been sent to the principal's office and that any misbehavior ceased if the teachers threatened to inform his mother.  She also acknowledged that H.P.'s problems typically occur in the late afternoon once his ADHD medication has worn off.[6]

Substantial evidence therefore supports the ALJ's finding that H.P.'s impairments did not meet Listings 112.05(C) or 112.05(D) for mental retardation.  Accordingly, this assignment of error is without merit.

### 2. Substantial evidence supports the ALJ's assessment of H.P.'s limitations in the six functional equivalence domains.

Plaintiff also alleges that the ALJ failed to consider all of his functional limitations in evaluating H.P.'s limitations in the six functional equivalence domains.  As noted *supra*, social security regulations require the claimant to be either markedly impaired in two functional domains or extremely limited in one domain to qualify as being functional

---

[6]ECF No. 7, pp. 153-155; 197-203.

equivalent to a listing disability. *See* 20 C.F.R. § 416.926a(b)(1), (d). In this case, the ALJ found that Plaintiff had less than marked limitations in acquiring and using information, attending and completing tasks, and health and physical well-being, and no limitations in interacting and relating with others, moving and manipulating objects, and in caring for himself. Plaintiff argues that the ALJ's analysis is flawed because he ignored not only H.P.'s behavioral problems, but his initial evaluation from Weems Community Mental Health Center diagnosing H.P. with oppositional defiant disorder; poor social skills; and a Global Assessment of Functioning ("GAF") score of 45 in April 2008.[7] Contrary to what Plaintiff argues, the ALJ's conclusions in this regard are substantially supported by the evidence.

As an initial matter, by Plaintiff's own admission, follow-up records from Weems in March 2009 reflect that he was subsequently diagnosed with ADHD; that his GAF score improved to 57; and, that his mother reported that he was doing better in Math and with homework.[8] Further, H.P.'s fourth grade teacher for the 2007- 2008 school year reported that he had mild limitations in acquiring and using information, and no limitations in interacting and relating with others; moving about and manipulating objects; and in caring for himself. She noted that his primary limitations were in attending and completing tasks as he often struggled with organization, failed to complete

---

[7] ECF No. 7. pp. 174-178.

[8] ECF No. 7, p. 222.

9

his work, and had a serious handwriting problem. Significantly, the evidence of record reflects that he continued to improve in school. As noted s*upra*, his sixth grade teacher for the 2009-2010 school year reported that he had no more than slight problems in attending and completing tasks, and received extra help to correct careless mistakes. She also noted that while he received extra help because of problems with acquiring and using information, it "was not to an unusual degree." He otherwise had no problems in moving about and manipulating objects; no problems in caring for himself; and no problems in interacting and relating with others, except when using vocabulary and grammar to express thoughts and ideas.

As noted by the ALJ, these findings were also corroborated by the opinions of state agency consultants submitted in November 2009 and May 2010, both of whom assessed H.P. as having less than marked limitations in acquiring and using information and in attending and completing tasks, and no limitations in caring for himself.[9]

These findings were also consistent with H.P.'s daily activities. Plaintiff's mother testified that he plays football and summer league baseball and that his asthma is well-controlled. She acknowledged that his asthma is doing "pretty well" so long as he does not get overheated or go outside frequently. He uses an Albuterol pump as necessary in the morning, but may go as long as a week without using it. He also takes Singulair, but no longer uses a nebulizer. She also testified that he has friends on his sports teams, and

---

[9]ECF No. 7, pp. 185-214-219; 223-228.

likes to play video games continuously and watch sports on television. She also agreed that his medication helped with the ADHD. In addition to regular classes and sports participation, H.P. takes care of his personal and grooming needs, and helps with household chores including cleaning, helping with the dishes, and mowing the lawn. He also does his homework with his mother's assistance; uses the computer; and visits with friends and family.[10]

Based on this evidence, the ALJ concluded that H.P.'s impairments did not functionally equal the listings. Substantial evidence supports the ALJ's findings and they will not be disturbed here.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking

---

[10]ECF No. 7, pp. 33-48; 210-213.

11

on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

      This the 30th day of December 2013.

                                                        /s/  Linda R. Anderson
                                       UNITED STATES MAGISTRATE JUDGE